# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN JEDNACHOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 2478 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, Kevin Jednachowski, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. § 423(d)(2). Mr. Jednachowski asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

Mr. Jednachowski applied for DIB on February 10, 2009, alleging that he became disabled on September 19, 2003, due to back and neck injuries. (Administrative Record ("R") 374-75, 431). 224-227, 135). After his application was denied initially and upon reconsideration, he was granted an administrative hearing before an administrative law judge; he actually ended up having two hearings, at which he testified and was represented by counsel. (R. 44-105). At the supplemental hearing, Dr. Bernard Stevens appeared and testified as a medical expert. (R. 82-105). On August 26, 2010, the ALJ determined that Mr. Jednachowski was not disabled at any point prior to the expiration of his insured status because he retained the capacity to perform a restricted range of light work. (R. 157-64).

Mr. Jednachowski requested review of the decision from the Appeals Council, and the case was remanded for further proceedings. Specifically, the Appeals Council instructed the ALJ to consider the March 2010 opinion from Mr. Jednachowski's treating physician restricting him to part-time work, and to consider the entire opinion of the medical expert that testified at the hearing, who concurred with Mr. Jednachowski's treating doctor. (R. 171-72). The ALJ convened another hearing on June 12, 2012, Mr. Jednachowski and his counsel appeared again. A new medical expert, Dr. Mary Jo Kosinski Voelpel, appeared and testified, and Edward Pagella appeared and testified as a vocational expert. (R. 106-151).

On November 19, 2012, the ALJ determined that Mr. Jednachowski was disabled from February 1, 2006, through November 17, 2009. (R. 31). Thereafter, the ALJ determined that his condition had improved to the point where he was capable of performing light work that did not involve climbing ladders, ropes, or scaffolds, or more than occasional balancing, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs. (R. 32). Because this allowed Mr. Jednachowski to perform jobs like hand packer, hand sorter, or assembler, the ALJ concluded he was not disabled and not entitled to DIB as of November 17, 2009. (R. 35-36). This became the Commissioner's final decision on January 29, 2013, when the Appeals Council denied Mr. Jednachowski's request for review. (R. 7-16). See 20 C.F.R. §§404.955; 404.981. Mr. Jednachowski has appealed that decision by filing suit in this Court under 42 U.S.C. §405(g), and both parties consented to jurisdiction pursuant to 28 U.S.C. §636(c).

# I.
## A.
### The Evidence

The question is whether the ALJ's determination that Mr. Jednachowski, who was disabled and unable to perform any level of work as of February 2006, had recovered and improved to the point where he was capable of performing light work by November 2009 is supported by substantial evidence. 42 U.S.C. §§ 405(g). The record in this case is over 1000 pages, cobbled together in no particular order, and given that the issues Mr. Jednachowski raises are specific and legal, we will skip the tedious and lengthy recitation of that evidence and summarize it very briefly. Mr. Jednachowski was 52 years old at the time of the ALJ's decision and, from the time he was 19 years old until 2003, he worked as an iron worker. (R. 49, 446). He hurt his back on the job in March 2003, but continued working until, in September of that year, he "couldn't take the pain anymore." (R. 49-50).

Beginning in November of 2003, he underwent a series of surgical procedures. He had a fusion an laminectomy at the L5-S1 level of his spine on November 13th. (R. 798-803). In February of 2006, MRIs revealed degenerative disc disease and abnormal alignment in Mr. Jednachowski's cervical spine, and degenerative changes and bulging disc in his lumbar spine. (R. 633-34). On February 22nd, he underwent a cervical discectomy and fusion with implantation of a stabilizing device. (R. 625-30).

Mr. Jednachowski continued to have problems with pain and range of motion in his back and neck. There was radiation of pain to his hands and legs, numbness in his hands, and diminished reflexes. (R. 543, 546, 551-52, 568-69, 662-63, 693, 701). On November 28, 2007, Mr. Jednachowski had his lumbar fusion hardware removed and replaced with an add-on fusion at L4-L5

with instrumentation and bone grafting. (R. 1201). At first there was relief (R. 776), but by January 2008, Mr. Jednachowski's problems had returned. (R. 571). The focus of his treating doctors' attentions at this point was his neck. MRIs and x-rays indicated that that surgery would have to be done over. (R. 563-565).

On March 11, 2008, Mr. Jednachowski underwent a removal of the cervical hardware, followed by a vertebrectomy at C6, and a fusion from C5 to C7 with a bone graft from his hip and insertion of a plate. (R. 560). At first he was doing better – although he was experiencing hip pain at the graft site – but his neck and low back pain returned in April and May. (R. 575).

Despite his continued symptoms, Mr. Jednachowski embarked on a course of physical therapy and work hardening. (R. 576, 752, 864-75). He continued to experience pain, as well as tingling and numbness during the 4-5 hour work sessions. (R. 864-75). By September 19, 2008, Mr. Jednachowski's treating physician, Dr. Bernstein, felt he was able to perform light duty work: no overhead lifting, no repetitive bending, twisting or lifting, no lifting of more than 10-15 pounds. (R. 576, 753). On October 17th, Dr. Bernstein said he could perform "light duty work" as long as he lifted no more than 20 pounds, and avoided repeated bending, twisting, and lifting. (R. 577).[1]

On February 3, 2009, Dr. Briney reported that Mr. Jednachowski's range of motion in his back was markedly reduced. Deep tendon reflexes were reduced in his legs. (R. 918).

On April 20, 2009, Dr. Lenore Gonzalez reviewed the file on behalf of the state disability agency. She said Dr. Bernstein's assessment should be given controlling and said she was adopting

---

[1] Dr. Bernstein was clearly working with a different definition than the Commissioner's, under which "light work" involves *frequent lifting* of up to 10 pounds, and occasional lifting of up to *20 pounds*. 20 CFR §404.1567(b); *see also Heckler v. Campbell*, 461 U.S. 458, 472 (1983)(noting that ALJ did not inquire into the difference between the doctor's "light duty" restriction and the Commissioner's definition of light work.

4

it. (R. 788). But, Dr. Gonzalez's assessment was a bit different. She did not indicate Mr. Jednachowski could not perform repetitive lifting, but instead found he could frequently lift up to 10 pounds and occasionally lift up to 20. (R. 782).

On April 30, 2009, Mr. Jednachowski told Dr. Bernstein he was still suffering continued pain and felt his surgeries had not been successful. (R. 841). Dr. Bernstein felt that Mr. Jednachowski had reached maximum medical improvement and suggested a comprehensive pain management program to help him learn to live with his pain on a daily basis. (R. 841). In September 2009, Dr. Briney reported that Mr. Jednachowski had constant and continuous pain and was unable to work due to these problems. His range of motion in his back was markedly reduced and he moved slowly. Plaintiff continued to be in constant pain. (R. 926).

Beginning in September 2009, Mr. Jednachowski participated in a pain management program. Through October and November, he continued to experience pain and significantly decreased range of motion. (R. 1027, 1030, 1034, 1045, 1090, 1094, 1096, 1137).

On March 8, 2010, Dr. Bernstein wrote that he "should have" limited Mr. Jednachowski to no more than part-time, light duty work. (R. 1138). On September 27, 2010, Mr. Jednachowski was still suffering low back pain with some radiation into his left buttock. Dr. Briney also reported he had "quite a bit" of spasms, muscle tension, and reduced reflexes. (R. 1144).

On April 24, 2012, Mr. Jednachowski had a cervical spine MRI, which revealed post-surgical changes and posterior disc osteophyte formation with a superimposed left parasagittal disc protrusion probably compressing the left-sided exiting nerve root. (R. 1196). There was also moderately severe left foraminal stenosis secondary to spurring at C5-6 and moderate bilateral foraminal stenosis at C6-7. (R 1197). Mr. Jednachowski had yet another operation – a cervical fusion – on July 12, 2012.

(R. 1199). He was still having low back pain, leg pain, problems with balance and some numbness in his feet the next month. (R. 1199). He also exhibited decreased strength in his arms and legs, markedly restricted movement in his back and diminished reflexes in his arms and legs. (R 1200).

On August 9, 2012, Mr. Jednachowski saw Dr. Briney. The doctor reported that he had markedly restricted range of motion in his back, myelopathic symptoms in his feet, weakness in his arms and legs, and some balance disturbance. (R. 1199-1200). Dr. Briney said he could not return to steel work, and noted, generally, that he had "an inability to work and move." (R. 1199-1200).

Then there were the medical opinions from the experts who testified at the two hearings. Dr. Stevens, who testified at the first, wasn't exactly crystal clear, but he seemingly felt that Mr. Jednachowski could do light work. He claimed his opinion was no different from that of Mr. Jednachowski's treating doctor, Dr. Bernstein, but it clearly was. (R. 94-95).

Dr. Voelpel, who testified at the second hearing, felt that Mr. Jednachowski was disabled from the time of his surgery in March 2008 and, given the general amount of time for recovery, for 12 months thereafter, which would have made Mr. Jednachowski ready to work in March 2009. But, she noted that his doctor said he could return to work in September 2008, so it would only be six months in Mr. Jednachowski's case. (R. 114). Dr. Voelpel also said there was a note from physical therapy in November 2008 that said he had no restrictions, but was unable to pinpoint it in the massive record. (R. 117). Later, it appeared she was talking about a note from a Dr. Joseph Tu, dated November 7, 2009, in which the doctor reported that range of motion was normal, but that Mr. Jednachowski was still suffering pain, depression, and taking 3-4 times longer than normal performing activities. (R. 118, 1024-25). Still, Dr. Voelpel interpreted the report as indicating that Mr. Jednachowski wasn't in significant pain and was able to perform daily activities and projects

6

at home. (R. 118). As of November 2009, Dr. Voelpel thought the report from the reviewing physician in April 2009 was accurate – that Mr. Jednachowski could perform a restricted range of light work, with only occasional bending, stooping, crouching crawling, balancing, (R. 121).

**B.**

**The ALJ's Decision**

In reaching his determination that Mr. Jednachowski was able to work as of November 18, 2009, the ALJ essentially adopted the opinion of Dr. Voelpel. (R. 34). He said it was consistent with Dr. Stevens' opinion and that of the state agency reviewing physician. (R. 33, 34). It was based on normal clinical exam findings and Mr. Jednachowski's own reported activities. (R. 34). The ALJ rejected Dr. Bernstein's more recent "look back" opinion limiting Mr. Jednachowski to part-time light duty work. The ALJ didn't think it was supported by any notes and was in direct conflict with his earlier opinion releasing Mr. Jednachowski for light duty work with no mention of any part-time restriction. (R. 33).

The ALJ went on to find that Mr. Jednachowski's claims of restrictions and disability were not completely credible. He based this determination on the medical evidence, certain conflicting statements he felt Mr. Jednachowski had made, and Mr. Jednachowski's description of his daily activities. (R. 34). Next, the ALJ recounted the vocational expert's testimony: an individual with Mr. Jednachowski's residual functional capacity as of November 18, 2009, could perform jobs like hand packer, assembler, or hand sorter, all of which exist in significant numbers in the local economy. (R. 35). The ALJ relied on this testimony to conclude that Mr. Jednachowski was not disabled as of November 18, 2009. (R. 35-36).

7

## II.
## A.
## The Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this

building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). It has also called this requirement a "lax" one, *Berger*, 516 F.3d at 544, although a reviewing court must still remand a decision that fails to meet this requirement even if the evidence shows the plaintiff is not disabled. *Sarchet*, 78 F.3d at 307.

**B.**

**The Five-Step Sequential Analysis**

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

> 1) is the plaintiff currently unemployed;
>
> 2) does the plaintiff have a severe impairment;
>
> 3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;
>
> 4) is the plaintiff unable to perform his past relevant work; and
>
> 5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

9

## C.

## Review of the ALJ's Decision

Mr. Jednachowski takes issue with four aspects of the ALJ's decision. First, he argues that the ALJ improperly based his determination that he had improved to the point where he could perform full-time light work on the testimony of the medical expert Dr. Voelpel. Second, he contends that the ALJ was wrong not to assign controlling weight to Dr. Bernstein's opinion that he was limited to part-time work. Mr. Jednachowski submits that the ALJ failed to adequately discuss the opinions from medical experts Dr. Stevens and Dr. Voelpel. And, finally, he argues that the ALJ's credibility determination was flawed. We take this last contention first, as it requires that this case be remanded to the Commissioner.

## 1.

The ALJ based his finding that Mr. Jednachowski was not fully credible on the medical evidence, inconsistent statements, and Mr. Jednachowski's activities. But, upon careful review, the ALJ's rationale does not withstand scrutiny.

The most obvious flaw in the ALJ's analysis is his reliance on Mr. Jednachowski's activities. The ALJ said that "[t]he claimant's reported activities since November of 2009 are fully consistent with the light exertional level . . . ." (R. 34). The ALJ cited Mr. Jednachowski as relating that he installed shelving in his garage, worked out with weights and on the treadmill, exercised daily, completed home projects, did yard work, laundry, dishes, and cooking. (R. 34). The ALJ also noted Mr. Jednachowski had testified that he goes to his children's event, attends church and socializes with friends. (R. 34). The Seventh Circuit has repeatedly warned ALJs not to equate sporadic activities with a capacity for full-time work. *See Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir.

10

2014)("... we have long bemoaned, ... [cases] in which administrative law judges have equated the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation."); *Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013)("We have remarked the naiveté of the Social Security Administration's administrative law judges in equating household chores to employment."); *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, Bjornson's husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

Compounding the ALJ's error here is the fact that his recitation of Mr. Jednachowski's activities wasn't entirely accurate and, as a result, he painted a much healthier picture of Mr. Jednachowski that Mr. Jednachowski described. Significantly, the ALJ completely ignored the many restrictions and limiting factors Mr. Jednachowski said impinged on his ability to complete an activity or how long the activity now took. *See, e.g., Scrogham v. Colvin,* 765 F.3d 685, 700 (7th Cir. 2014) (ALJ failed to recognize that claimant did not perform listed activities regularly); *Hamilton v. Colvin*, 525 Fed.Appx. 433, 438 (7th Cir. 2013)(ALJ ignored the fact that claimant's activities were brief or performed with frequent breaks); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013)("We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."); *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)("An ALJ cannot disregard a

11

claimant's limitations in performing household activities.").

Let's begin with the shelves in Mr. Jednachowski's garage. Mr. Jednachowski actually said that he had "undertaken" a project installing shelves in his garage, so it's not clear he ever managed to complete the project. He also qualified his ability to do anything, saying that, while he could do most activities of daily living, it took him "three or four times as long" as it once did. (R. 1024, 1036). That wouldn't fly in the workplace. And while he did exercise every day, he did so because it was part of his rehabilitation program (R. 1024, 1027), *see Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)(exercise as part of prescribed treatment is not inconsistent with complaints of pain), and he "was hopeful" the program would reduce his pain "in the future." (R. 1025). It hadn't as of November 2009. (R. 1024-25).

Mr. Jednachowski performed other activities like doing laundry or yardwork "every now and then." (R. 1027). As for attending his children's events, he testified that didn't go to football games, because he couldn't sit out in the cold. (R. 64). He couldn't sit through basketball games; he had to keep getting up and down to relieve his pain. (R. 65). And he didn't attend regularly; most of the time he couldn't go due to his pain. (R. 65, 140). He generally had to leave church services early or skip them because of his pain. (R. 140). As already indicated, Mr. Jednachowski's unedited descriptions of his activities paint a different picture than the one the ALJ inaccurately made. Contrary to the ALJ's factually flawed rendition, Mr. Jednachowski's activities were not "fully consistent" with performing light work eight hours a day, seven days a week.

The ALJ also found Mr. Jednachowski less that fully credible due to what he perceived were inconsistent statements he supposedly made. But the only examples the ALJ was able to give do not support his characterization of Mr. Jednachowski's testimony. He noted that Mr. Jednachowski said

12

he could only sit for twenty minutes, but drove from Wheaton, Illinois, to Georgia. (R. 34). Mr. Jednachowski testified in June 2012 that he could sit for a half hour or twenty minutes before he experienced pain and had to get up to move. (R. 136). The story the ALJ refers to comes from his occupational therapist's note of September 28, 2009:

> Pt. reports being able to drive about 1 hour before he needs to stand up. He drives for grocery shopping. Pt. did drive to Georgia from Wheaton, Illinois.

(R. 1045). There's nothing inconsistent about being able to sit for no more than an hour in 2009 and for no more than a half hour in 2012, especially when a degenerative condition is involved. As for driving to Georgia, the remark is unamplified, so it could be – and probably was – that Mr. Jednachowski took hourly breaks. Perhaps him telling his therapist that he "did" drive that far meant that he was able to do it in the past but not any more. The ALJ never asked him about it, so we can only guess. And the ALJ's guess to Mr. Jednachowski's disadvantage was impermissible.

Next, the ALJ says that Mr. Jednachowski's testimony that he walks his dog for 20 minutes or ½ mile at a time conflicts with his testimony that he could only walk for 20 minutes. (R. 34). That simply makes no sense, as walking for 20 minutes is walking for 20 minutes. The ALJ also chided Mr. Jednachowski for saying he was not happy with some of the jobs he was being offered (R. 34). In context, however, he wasn't just being picky. What he said was he felt he was capable of doing work that was sedentary, as opposed to light or heavier. (R. 1024). So of course he wasn't happy. Again, it's unclear where the conflict lies in these statements, and the ALJ did nothing to clear up any confusion he had.

That leaves the medical evidence as the final leg to support the ALJ's credibility finding. That's a problem in the Seventh Circuit. The court has repeatedly held that an ALJ may not discount

13

a claimant's statements regarding the intensity of his symptoms and the effect of those symptoms on the ability to work solely on the basis of the objective medical evidence. *Williams v. Colvin*, 757 F.3d 610, 614-15 (7th Cir. 2014); *Moore*, 743 F.3d at 1125; *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). With only the objective medical evidence left as the rationale support to the ALJ's credibility determination, it cannot be upheld. This case must be remanded to the Commissioner.

### 2.

Because this matter must be remanded as a result of the ALJ's credibility analysis, we need not address Mr. Jednachowski's remaining arguments. But, some comment on these issues is worthwhile as the ALJ did not err as Mr. Jednachowski claims.

Mr. Jednachowski argues that the ALJ erred by not according controlling weight to the opinion of his treating physician, Dr. Avi Bernstein. Significantly, on October 17, 2008, Dr. Bernstein reported that Mr. Jednachowski had realized "maximum medical improvement" and "would be capable of performing light duty work activity with a 20 lb. lifting restriction and avoidance of repetitive bending, lifting or twisting." (R. 577). Just prior to that, on September 19, 2008, Dr. Bernstein noted that Mr. Jednachowski was "functioning at the light duty level in work hardening and [he was] going to release him to permanent light duty restrictions . . . ." (R. 576). The doctor continued to treat Mr. Jednachowski and, on June 22, 2009, noted that Mr. Jednachowski told him that "despite the restriction we have given him, he does not feel he can work *full time* in a light duty position." (R. 840 (emphasis supplied)). Dr. Bernstein recommended a functional capacity evaluation. (R. 840 ). Again, it's unclear whether Dr. Bernstein's "light duty" jibes with the Commissioner's "light work." *Supra*, at 4 n.1.

At the hearing, the ALJ pointed out to Mr. Jednachowski's counsel that the evidence,

14

including opinions from doctors who treated him, suggested Mr. Jednachowski could perform light work. Counsel agreed, but said "we're not sure that they're saying eight hours a day five days a week." (R. 68). Counsel thought Dr. Bernstein's assessment was based on work hardening sessions which were limited to four or five hours a day. (R. 69). There was no indication in the doctor's notes of that, however, and counsel conceded that was "putting his best spin on it." (R. 70). He asked the ALJ to leave the record open so he could send Dr. Bernstein a questionnaire. (R. 70). Thereafter, once contacted by Mr. Jednachowski's counsel, Dr. Bernstein wrote on March 8, 2010, that, in the October 17, 2008 note, he "should have included on a part time basis, no more than four to five hours per day." (R. 1138). On August 20, 2012, he again wrote to Mr. Jednachowski's attorney and stated that Mr. Jednachowski was "functioning at the sedentary to light physical demand level" in February 2012. (R. 1202). Dr. Bernstein reported that he last saw Mr. Jednachowski in October 2012. He stated that Mr. Jednachowski had a permanent disability, but had a "work release in the sedentary to light duty physical demand category." (R. 1202).

The ALJ discredited the modified, *post-hoc* opinion for a number of reasons, supported by citations to notes from Dr. Bernstein detailed above:

> Despite stating that the restriction to part time work began as of October 2008, Dr. Bernstein did not offer such a restriction until March 2010 (20F). In June of 2009, he also specifically requested that a functional capacity evaluation be completed in order to determine *whether or not the claimant could perform light duty work on a full time basis*. (16F, p.1). Although, interestingly enough, the functional capacity report is not referenced, Dr. Bernstein specifically confirmed that the functional capacity evaluation report the sedentary to light physical demand level *without evidence of a limitation to only part time work.* (27F, p.2).

(R. 33). The ALJ rightfully felt that all weighed heavily on the credibility of the doctor's modified opinion limiting Mr. Jednachowski to part-time work.

15

We have in this case a treating physician who determines that his patient can be released for "light duty" work. (R. 576, 577). He makes no mention of any part-time restriction, and the default setting, as it were, in a work release from a doctor is full-time work, unless the doctor says otherwise. The doctor later confirms that he meant, not surprisingly, that the restriction he had given his patient was for *full-time* light duty work. (R. 840). It is only when he is prompted by his patient's lawyer, a year and a half later, that the doctor says he meant part-time. (R. 1138). It's doubtful, to say the least, that a doctor would release a patient for work, have the patient come back and say he can't work full-time, and only months later after being cued say that he meant part-time all along. There may have been a different "spin" to put on it, but the ALJ took a logical path and discredited the relatively recent modification as being inconsistent with Dr. Bernstein's other notes. *See Yurt v. Colvin*, 758 F.3d 850, 861 (7th Cir. 2014)(ALJ need not assign controlling weight to treating physician's opinion if it is inconsistent with other evidence); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)(ALJ may discount treating physician opinion if it is inconsistent with his own notes). Still, however, we are left with the nagging question of whether "light duty" is the same as "light work." It would be best to clear that up on remand.[2]

Mr. Jednachowski also complains that the ALJ did not present an accurate picture of the opinion of Dr. Stevens, the medical expert who testified at the second hearing on July 12, 2012. [Dkt. # 13, at 11]. He takes the ALJ to task for saying that "Dr. Stevens did not account for Dr.

---

[2]Again, Dr. Bernstein's idea of "light duty" does not exactly match the Commissioner's – and hence the ALJ's – definition of "light work." Under the Commissioner's regulations, light work requires the ability to lift up to 20 pounds about 1/3 of the day and up to 10 pounds about 2/3 of the day. *See* 20 CFR 404.1567(b); Social Security Ruling 83-14. Dr. Bernstein specified that Mr. Jednachowski's "light duty" could *not* involve "repetitive" lifting, which would seem to conflict with the Commissioner's definition of "light work." But this is not an argument Mr. Jednachowski made, and so it is waived. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

16

Bernstein's modified opinion restricting the claimant to part-time work . . . ." (R. 33). And he submits that Dr. Stevens testified that his opinion was consistent with Dr. Bernstein's – in other words, that Mr. Jednachowski was limited to part-time work. [Dkt. # 12]. Review of the testimony at issue demonstrates that Dr. Stevens wasn't the clearest witness but, even though Mr. Jednachowski's confusion is understandable, it must be said that he has the wrong idea about Dr. Steven's testimony, and it cannot be said that the ALJ's treatment of Dr. Stevens' opinion was an "egregious error."

Dr. Stevens' thoughts on Mr. Jednachowski's case were a little conflicted. The doctor began by explaining to Mr. Jednachowski's counsel that it was not unusual for patients recovering and rehabilitating from the surgeries Mr. Jednachowski had to experience pain during a 4- or 5-hour work hardening session. (R. 93). It would also be possible that such a person would have pain during an 8-hour day. (R. 94). Dr. Stevens then said that it could also be true that Mr Jednachowski was limited to part-time work as Dr. Bernstein suggested in his modified opinion. (R. 94). As Dr. Stevens said, "[h]e's the treating source. I'm not the treating source." (R. 94). His opinion "would have to be given . . . Major, weight major opinion." (R. 94). Dr. Stevens isn't offering *his* opinion in that exchange, he's talking about Dr. Bernstein's and parroting the general rule that opinions from treating physicians are entitled to controlling weight – within certain parameters, of course. *See, e.g., Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)("A treating physician's opinion is entitled to controlling weight if it is supported by medical findings and consistent with substantial evidence in the record.").

Although Dr. Stevens said Dr. Bernstein was entitled to major weight, and it was possible that Mr. Jednachowski was limited to part-time work, his opinion was different:

17

> ALJ: Do you – Is it your – it's your opinion based upon the medical record that Claimant is capable of light work on a full-time Basis?
>
> Dr. Stevens: Light work capacity, yes.
>
> ALJ: Do you see anything in the record that contradicts that, either in the opinion of Dr. Bernstein or anyone else, indicating that he'd be capable –
>
> Dr. Stevens: No, but I think Dr. Bernstein is more – probably because he's the treating source and I'm just the reviewing source and he's more familiar with the claimant's pain complaints and his limitations from those pain complaints than I am. That's probably why he limited him to part-time work.
>
> \* \* \*
>
> But, in my opinion, you know, without looking at the – if Dr. Bernstein's opinion wasn't there I would say he could do full-time work.

(R. 95). So, as the ALJ indicated, Dr. Stevens' opinion did not account for Dr. Bernstein's opinion. He seemed to be respectful of it, but he had his own view of the evidence. The rest of the record, aside from Dr. Bernstein's opinion, led him to a different conclusion.

As for Dr. Stevens testifying that his opinion was consistent with Dr. Bernstein's, based on his testimony, he could only have meant that it was consistent in terms of exertional level only. As we have seen, he clearly testified that he felt Mr. Jednachowski could work full time based on the medical evidence. Still, Dr. Stevens' testimony indicated he had a rather generous definition of what "consistent" means. The ALJ – who was struggling with a witness who was rather difficult to follow – asked whether his opinion was "[c]ontradictory" to Dr. Bernstein's:

> Dr. Stevens: No.
>
> ALJ: Consistent?
>
> Dr. Stevens: Yes.
>
> ALJ: Okay.
>
> Dr. Stevens: It's just that Dr. Bernstein is not letting him work full-time, that's all.

But as Dr. Bernstein said, he could do light duty work on a part-time basis.
(R. 95). The "that's all" Dr. Stevens refers to, however, is the difference between being considered disabled and being considered able to perform light work full-time. With respect to Dr. Stevens, that's contradictory and not consistent. It's like saying he's dressed identically to Dr. Bernstein even though one of them isn't wearing pants. So, the ALJ got it right – or as right as anyone could have – in his discussion of Dr. Stevens' testimony.

## CONCLUSION

The plaintiff's motion for remand [Dkt. #12] is GRANTED, and the Commissioner's motion for summary judgment [Dkt. #18] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 7/6/15